UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE GOVERNMENT OF THE PROVINCE OF MANITOBA, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 02-2057 (RMC) |
| KEN SALAZAR, Secretary, Department of the Interior, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**OPINION**

In this longstanding case concerning the National Environmental Policy Act, we await an Environmental Impact Statement (EIS) promised by the Bureau of Reclamation, a constituent agency of the Department of the Interior. The underlying federal action requiring environmental study is the Northwest Area Water Supply (NAWS) Project in North Dakota that is designed to bring several billion gallons of Missouri River water across the continental divide into the Hudson Bay Basin and into homes in northern North Dakota. The Province of Manitoba sued because Interior issued only an Environmental Assessment (EA) and a Finding of No Significant Impact (FONSI). That conclusion was so preposterous given the scope of NAWS, this Court remanded for a hard look at the issue. *See* February 3, 2005 Memo Op. & Order [Dkts. 87 & 88]. Since then, the case has been before the Court a second time and remanded a second time for a full EIS. *See* March 5, 2010 Memo Op. & Order [Dkts. 175 & 176]. A partial injunction was entered by this Court in 2005 to ensure that actions by the federal and state governments, while waiting for an environmental analysis, would not influence any final decision but still allow certain aspects of the Project to proceed. The partial injunction has been

1

modified many times since.[1]  Upon reviewing a joint status report filed by the parties in October 2012, the Court expressed concern to the parties that the construction proposed for 2013 could impact the EIS and sought briefing from the parties regarding whether a modification to the injunction should issue in 2013.

The Court concludes that North Dakota can finish the Minot treatment plant upgrade but is enjoined from new pipeline construction and new pipeline construction contracts until a full EIS is completed and approved.  If there are other outstanding contracts on which work might be done, North Dakota should further describe them explicitly to the Court.

## I.  FACTS

The Court hastens this decision to advise North Dakota before work is to begin on awarding contracts for the 2013 construction season.  Therefore, this decision is abbreviated and the Court refers readers to its prior decisions for the full history of the matter.  In sum, the Bureau of Reclamation is trying to assist the State of North Dakota by bringing an improved water supply to the citizens in the northern parts of the State.  The plan is to remove water from the Missouri River, where it flows through the northwest corner of North Dakota before entering Missouri, and pipe it across the continental divide to a treatment plant in Minot.  The Province of Manitoba objects that an EIS is needed to ensure that foreign biota from the Missouri River Basin will not be released into the Hudson Bay Basin and flow north to Manitoba.  This Court has ruled twice already that Reclamation has been too hasty and insufficient in its adherence to the dictates of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321, *et seq.*

---

[1]  The complexities of the issues are detailed in this Court's prior Opinions and Orders.  *See* March 5, 2010 Memo Op. & Order [Dkts. 175 & 176]; February 3, 2005 Memo Op. & Order [Dkts. 87 & 88]; *see also Gov't of the Province of Manitoba v. Salazar*, 691 F. Supp. 2d 37 (D.D.C. 2010); *Gov't of the Province of Manitoba v. Norton*, 398 F. Supp. 2d 41 (D.D.C. 2005). For purposes of the instant Order, the Court assumes familiarity with the entire history.

("NEPA").  Although active work has been underway on the NAWS Project since 2002, the Bureau of Reclamation has yet to produce a complete EIS.

The Court consolidated two civil actions on March 11, 2009, bringing the State of Missouri into the present case as a plaintiff.  *See* March 11, 2009 Order [Dkt. 113].  Missouri protests the intention to remove water from the Missouri River, to the alleged environmental detriment of its citizens.  Thus, the entire Project must be evaluated by the Bureau of Reclamation: from the choice of a water source to the environmental consequences of transporting it.

Following the issuance of its first opinion, this Court drew a tailored injunction to allow North Dakota to proceed with such construction as would not influence the environmental analysis.  *See* Memo. Op. & Order [Dkt. 95].  It has been modified on several occasions.  *See* March 24, 2006 Minute Order (granting Defendants' motion to modify the injunction); March 18, 2010 Minute Order (granting North Dakota's unopposed motion to modify the injunction); October 25, 2010 Order [Dkt. 193] (granting in part and denying in part North Dakota's motion to modify the injunction).   The parties filed a joint status report on October 19, 2012, stating that additional construction on the Northern Tier pipeline is scheduled for 2013.  *See* Dkt. 195.  Upon review of the status report, the Court *sua sponte* ordered the parties to show cause why such activity would not impact the environmental analysis.  *See* November 16, 2012 Order [Dkt. 196].  The United States takes no position on the substance of the question but frankly advises the Court that:

> Analysis in the [Supplemental Environmental Impact Statement] of the no action/no project alternative may include consideration of the environmental and economic consequences of not completing the project. Thus, for instance, Reclamation's analysis in the SEIS may acknowledge the existence of already-constructed project components as part of its description of the affected environment pursuant to 40 C.F.R. § 1502.15.

3

Fed. Defs.' Resp. [Dkt. 198] at 2.  This compares, with unfortunate overtones, to the Federal Defendants' assurances in October 2010 that "[r]eview of the issues and preparation of the supplemental EIS will be conducted notwithstanding any part of the NAWS project that has been designed or constructed."  Fed. Defs.' Resp. [Dkt. 192] at 2.

## II. ANALYSIS

The question presented by Manitoba was whether the scope of NAWS is such that Reclamation is required by NEPA to perform a more searching environmental analysis.  The answer was decidedly yes, and the case was remanded for that purpose.  *See Gov't of the Province of Manitoba v. Norton*, 398 F. Supp. 2d at 67.  During the remand, Reclamation announced that it would perform an EIS.  The resulting "EIS," however, was limited to water treatment issues in the Missouri River Basin and *did not* adequately address the cumulative impacts of water withdrawal on the water levels of Lake Sakakawea and the Missouri River or the fundamental issue of biota transfer across the continental divide into the Hudson Bay Basin.  *See Gov't of the Province of Manitoba v. Salazar*, 691 F. Supp. 2d at 51.  Thus, Reclamation has twice now snubbed its obligations under NEPA in its haste to work with the State of North Dakota.

North Dakota has been an impatient participant.  It now reminds the Court most vociferously that NEPA is merely a procedural statute that only requires certain analyses before a project may proceed.  While the Court well appreciates—and shares—the State's impatience, it is wrongly directed towards any but Reclamation which has not yet fulfilled its statutory duty.  Properly understood, NEPA requires an environmental analysis of the full consequences of a large federal project—with the inevitable, and necessary, possibility that those consequences will result in a no-project determination.  Not having received any semblance of a full EIS on NAWS,

the Court has no opinion on the validity of future analyses or whether, with full analyses, NAWS should or should not proceed.  The Court's duty, however, is to ensure that a no-go option receives the complete consideration it requires without undue influence from North Dakota's impatience.[2]

This conclusion is especially pertinent now that the State of Missouri has complained that the reduction of upstream water from the Missouri River, as required by the NAWS design, will have deleterious environmental impacts downstream in Missouri.  While the case brought by Manitoba focused on water treatment, the addition of the State of Missouri adds the fundamental question of the water source for NAWS.

The purpose of the Court's injunction in April 2005 was to fashion "a more tailored remedy . . . that permits the project to move forward in 2005 while preserving the opportunity for sound decision-making under NEPA."  Memo. Op. & Order [Dkt. 95] at 6. While none of us expected the NEPA process to take so long, the Court's purpose remains identical today.  When it authorized limited construction in 2005, the Court also ordered that "[b]efore any other NAWS construction may proceed, the government must return to the Court to demonstrate why the proposed additional construction would not influence or alter the agency's ability to choose between water treatment options . . . ."  *Id.*  Federal Defendants are advised that this injunction remains in place and the status of construction cannot influence or alter the choice between water treatment options.  And, as made clear by the Court's refusal in 2010 to authorize design work for the water intake element at Lake Sakakawea while work on

---

[2] Timothy Freije, North Dakota's NAWS Project Manager, states that the planned 2013 pipeline construction "does not affect the alternatives that may be examined in the [Supplemental Environmental Impact Statement]."  N.D. Resp., Decl. of Timothy Freije [Dkt. 199-1] ¶ 5. Given the change in the position of the Federal Defendants, who are actually preparing the complete EIS, the Court is not assured.

the Minot treatment plant could continue, the question of the source of the water is now part of the focus as well.  *See* October 25, 2010 Order [Dkt. 193] at 1.

For immediate purposes, the Court concludes that the 2005 injunction should remain in place and be modified only in part.  The injunction will be modified to permit North Dakota to finish the Minot treatment plant upgrade.  The injunction will not permit new pipeline construction or new pipeline construction contracts.

### III.  CONCLUSION

Pursuant to the discussion above, the Court will order a partial modification of the 2005 injunction, which otherwise remains in place and runs to all Defendants.


DATE: March 1, 2013

/s/
ROSEMARY M. COLLYER
United States District Judge